SAVOY, Judge.
This appeal involves a suit for declaratory judgment under the Workmen’s Compensation Act. Defendant, Albert Alfred, who resides in Avoyelles Parish, was employed as a laborer by plaintiff, Bernie Pigott, d/b/a B & L Construction Company, who carried a workmen’s compensation insurance policy with plaintiff, Market Insurance Company. Plaintiffs allege that defendant received a compensable injury on February 8, 1966, when a set of bells fell from an electric pole and struck him on his head and shoulder. It is alleged that defendant was provided medical treatments and has now recovered to the extent that he can return to work. Accordingly, plaintiffs pray for judgment authorizing the cessation of the weekly benefits being paid to defendant under the Act. In the alternative, it is alleged that defendant is suffering only an impairment of a physical function within the contemplation of LSA-R.S. 23:1221(4) (p), and that benefits due defendant should be limited thereunder to not more than $25.00 per week for a period not to exceed 100 weeks, subject to a credit for compensation previously paid.
Defendant filed an answer denying that plaintiffs are entitled to th.e relief prayed for and reconvened for a judgment decreeing that he is totally and permanently disabled under the provisions of the Workmen’s Compensation Act.
In answer to the reconventional demand plaintiffs filed a plea of prematurity on the basis that defendant is being paid full weekly compensation benefits.
After trial on the merits, the district court rendered judgment for defendant, dismissing plaintiffs’ suit. The exception of prematurity was sustained and the re-conventional demand was also rejected. Plaintiffs have filed an appeal to this *195 Court. Defendant has not appealed or filed an answer to the appeal.
The sole issue for our consideration is the extent of defendant’s disability as related to the accident of February 8, 1966.
Plaintiffs maintain the medical evidence shows that defendant is able to return to work with only a slight disability amounting to a 15% residual disability of the spine. Plaintiffs submit that there was no substantial conflict in the medical testimony, and that the district court erred in considering the lay testimony and ignoring the medical testimony. Plaintiffs also maintain that the medical evidence shows that any present disability of defendant to return to work relates to an after acquired disease, that of gout, rather than to the disabilities resulting from the accident. In this connection it is argued that defendant was treated by Dr. H. A. McConnell of Bunkie, and by doctors at the Veterans Hospital in Alexandria, and his failure to call these doctors to testify on his behalf should be construed against him.
Defendant maintains that there was no manifest error in the trial court’s holding that plaintiffs failed to carry the burden of proof. It is maintained that the evidence shows defendant could not return to his previous work without substantial pain and other difficulties, and that his disabilities related to the accident of February 8, 1966.
The record shows defendant sustained an injury on February 8, 1966, in De-Quincy, Louisiana, while he was in the course and scope of his employment as a laborer with B & L Construction Company. His employer had a contract with Central Louisiana Electric Company to replace power line poles. The defendant was in the process of hoisting a set of “bells” by means of a rope and pulley when the bells, which are of ceramic construction and which weigh approximately seventy pounds, slipped off the hook and fell a distance of approximately thirty-five feet, striking defendant on the head and neck, rolling off his shoulder. Defendant was stunned and fell to the ground. He was hospitalized at DeQuincy for one week, during which time he was treated for a cerebral concussion, for injuries to the muscles of the neck, and for bruises and contusions about his face and scalp. His treatment consisted of medication, diathermy and traction. He was released to seek medical treatment nearer his home.
On February 14, 1966, Dr. Bernard Kap-lan, a general surgeon of Alexandria, had defendant admitted to St. Frances Cabrini Hospital in Alexandria for X-rays. Dr. Kaplan found defendant to have a fracture of the odontoid process and called in Dr. C. W. Lowery, an orthopedic surgeon of Alexandria, for treatment.
Dr. Lowery treated defendant a total of sixteen times between February 14, 1966, and September 21, 1967. In consultation with Dr. Kaplan, he diagnosed defendant’s condition as a fracture of the odontoid process of the second cervical vertebra, with minimal displacement. The odontoid process is a portion of the second vertebra in the neck which projects up into the ring of the first cervical vertebra. This process provides an axis for rotation of the first vertebra which allows the head to turn from side to side. The location of his fracture is a potentially dangerous one, since a displacement could sever the spinal cord. Defendant was placed in a minerva jacket, which is a cast from the waist upward, encircling the head and neck, leaving only the face and ears out. This cast was removed in May of 1966, and a brace was applied until July, when a plastic cervical collar was prescribed. The defendant was advised to discontinue the use of the collar in October of 1966. In April of 1966 defendant developed a complication, he vomited blood, and was referred back to Dr. Kaplan. Transfusions were necessary for either a stomach or a duodenal bleeding ulcer.
Dr. Lowery testified that by December of 1966 defendant had improved and had considerably better neck motion although *196 he was still having some suboccipital and paravertebral tenderness. At this time he believed defendant could return to a trial at work on January 10, 1967, and he estimated defendant would have approximately 10% to 15% residual impairment. In February of 1967, defendant told Dr. Lowery that his employer would not take him back on a trial basis as recommended, and that he had to be completely released. Accordingly, at that time Dr. Lowery discharged defendant with a 15% residual impairment of the spine which was permanent.
In March of 1967 another complication developed. Defendant began having swelling of his right great toe and was unable to wear shoes, and the neck stiffness remained about the same. Additionally, defendant had had headaches which had been intermittent since his injury. There were also aches in the upper thigh and in the shoulder. Dr. Lowery diagnosed defendant’s condition as a disease process, that of gout, superimposed on his other condition, and prescribed medication. By April the swelling in defendant’s toe subsided, and he was treated only with aspirins and buf-ferin. Defendant could not take any other medicine because of his prior bleeding ulcer. Dr. Lowery referred defendant to his family doctor or the Veterans’ Administration for treatment of the gout. In September, 1967, defendant returned, stating he had not seen any other doctor, and that he was still having headaches and neck pain. He also complained of a gritting sensation with the turning of his neck. Another complaint was that his ears would stop up frequently. On the September 21, 1967, visit, Dr. Lowery told defendant he did not feel any other treatment was necessary for his neck, and discharged defendant from his care with a rating of 15% partial permanent impairment of the spine as a whole.
As of this last visit, Dr. Lowery believed defendant could return to work, provided he would control the gout. He stated there is no proof that gout is caused by trauma, but that trauma, such as surgery or injury, and so on, can cause a flareup. Such flareups are generally transitory. Because of the time lapse between the injury in February, 1966, and the attack of gout in March, 1967, Dr. Lowery did not think that the attack of gout had any bearing to the accident.
Dr. Lowery testified that defendant would have discomfort or aches on extensive or excessive use of the neck. He did not think the pain would be of a degree that would cause the defendant possible injury to himself or others. Nor did he believe the pain and discomfort would be of such a severe magnitude as to prevent defendant from working.
Dr. Daniel M. Kingsley, an orthopedic surgeon of Alexandria, Louisiana, examined defendant at the request of plaintiffs on May 12, 1967. He found defendant to have a healed fracture of the odontoid process. Defendant complained of pain in his neck, and of headaches and dizziness. He also complained of a gritting sensation in his neck. Dr. Kingsley felt that defendant’s complaints as to pain on palpation and pressure on the back of his neck were vague, in that they were inconsistent. His diagnosis was a healed fracture of the odontoid process of second cervical vertebra. Dr. Kingsley believed defendant would have a little ache with very strenuous use, which might possibly be there for years, or possibly permanently. He felt there was no permanent disability and that the defendant could return to heavy labor. Upon return to work, there would be some symptoms of stiffness and some aches. He felt defendant could go back to strenuous laboring work without severe enough pain to keep him from being gainfully employed.
By stipulation of the parties a number of medical reports were introduced into evidence, including several reports of Dr. C. W. Lowery, and one each of Drs. D. J. Drez of DeQuincy, Bernard Kaplan of Alexandria, and H. A. McConnell of Bunk- *197 ie. The substance of the reports of Drs. Drez and Kaplan have already been covered. Dr. McConnell examined the defendant on September 27, 1967. He noted that the rotation of defendant’s head was normal, but that defendant stated he felt a grating sensation in his neck. Forward flexion of th.e neck was very slightly limited, with some spasm of the muscles of the back of the neck. Dr. McConnell. prescribed medication, Benamid .5 gm. for the gout, and Tylenol for pain. The report was dated October 23, 1967, and indicated the doctor had seen the defendant only on this one occasion. Defendant testified he saw Dr. McConnell on another occasion also for medicines for his troubles. Defendant also spent about two or three weeks in the Veterans Hospital in Alexandria in 1967, and had X-rays taken there just before the trial, but there was no medical evidence presented covering his treatments or examinations at this hospital.
The record also shows that defendant is 44 years of age and had worked regularly as a common laborer up to the time of the accident. He had worked for B & L Construction Company almost six months, and the work consisted of digging holes, pulling wire, and other “high line” work.
Defendant testified he had some stomach trouble before the accident, but had never lost work because of it. His complaint was with his head and neck. His neck gets stiff and sore, and he has a grating sensation when he turns his head. He testified he has headaches and dizzy spells, and has pain in his neck, when he tries to do any work. Then, h.e has to take aspirin and pain pills and lie down to recover. He also uses the neck collar at times, but infrequently, when his neck gives him trouble. He applied for his job with B & L Construction Company in January of 1967, but was not accepted.
The only place he has worked since the accident was at a camp where sportsmen stay for hunting at Lake Charles, where he was hired to wash dishes, serve tables, mop; make beds and similar work. He testified he managed the first day, although he had pains and headaches, became nauseated, and had to lie down for a while during the day. The next morning when he was washing dishes at breakfast, he was having the same troubles and lost consciousness. This was the only time he has ever fainted. A co-worker at the camp, Edward Pierson, also testified that defendant had troubles with pains in his neck and had headaches, and had to rest. He was present when defendant fainted the following morning. Defendant also testified he has been unable to do any type of activity of substance without suffering with his neck and head, and that even light chores around his home are unbearable unless he takes his time and rests often.
After carefully considering the record in this case, this Court finds no manifest error in the holding of the district court. Both of the orthopedic surgeons testified that defendant would likely have some pain and discomfort in the area of his neck for some time, although they did not believe his condition was severe enough to be disabling. Neither doctor denied the subjective complaints of defendant. The district court was impressed with the testimony of defendant and believed him to be telling the truth. It is noted that defendant had worked regularly until the accident, but has not worked since, except for the day or two when he experienced difficulties and then fainted. He has been unable to engage in any type of physical activity without feeling ill effects therefrom. As" is brought out in the testimony of Dr. Lowery, pain is a subjective matter and its extent and intensity may vary from one individual to another. Dr. Lowery also testified that the subjective complaints of the grating sensation in defendant’s neck would be consistent with the injury he had, as would discomfort or exertion. The defendant’s injury was not a common one, as Dr. Lowery had treated only five or six such cases, and *198 Dr. Kingsley only twelve to fifteen such cases, although both doctors have extensive experience in their fields. The permanent disability to defendant’s spine was rated at 15%, which appears significant considering the type work that defendant was doing for his employer. The record shows the employer refused to rehire defendant unless he got a release from the doctor and the insurance company, and would not put him to work on a trial basis.
Although Dr. Lowery felt that the gout was not related to the accident, he did not rule out this possibility completely, and the record is inconclusive on this point. However, Dr. Lowery testified that the subjective complaints of pains and headaches could be related to the accident.
Considering the facts of this case, we find that the district court acted within its discretion in considering the defendant’s testimony in determining the extent of pain or discomfort he experienced on increased activities. The injury was an unusual one, was located in a serious area, and there were additional complications to consider. The doctors did not categorically deny that the headaches and other troubles, in addition to the neck pains, were connected with the accident. The district court was convinced defendant was not exaggerating and had not and could not work, and chose to give him the benefit of any doubt, finding that plaintiffs had failed to carry the burden of proof.
We have carefully examined the cases cited by plaintiffs, but do not find that any are controlling. The only case cited where the appellate court reversed the district court was that of Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286. In that case plaintiff sustained a sprain in the cervical area and refused to go back to work on a trial basis. The appellate court found the plaintiff had failed to discharge the burden of proof imposed upon her by law of establishing that she would be required to work in substantial or appreciable pain. In the case before us on appeal, defendant had a more serious type injury and has shown that he has not been able to resume even light employment.
Plaintiffs argue that defendant’s failure to call in Dr. H. A. McConnell and the doctors at the Veterans Hospital should be construed against him. As to Dr. McConnell, by joint stipulation, the parties submitted his report dated one month before trial, and defendant had only returned on one other occasion for medication. The record shows the earlier visits to the Veterans Hospital were known to the plaintiffs, and that the last X-ray examination was just before trial. Although this raises some presumption against defendant, we do not believe it controlling in this case. Neither party requested a continuance to determine the outcome of these medical examinations.
For the reasons assigned, the judgment of the lower court is affirmed, and all costs of this appeal are assessed to plaintiffs.
Affirmed.